

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2004

# Brzozowski v. Corr Phy Ser Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-3659

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Brzozowski v. Corr Phy Ser Inc" (2004). *2004 Decisions.* Paper 945.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/945

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE
THIRD CIRCUIT

_____

No. 02-3659

_____

NOREEN A. BRZOZOWSKI,

Appellant

v.

CORRECTIONAL PHYSICIAN
SERVICES, INC.; PRISON HEALTH
SERVICES, INC.

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civ. No. 00-cv-02590)
District Judge:
Honorable Mary A. McLaughlin

_____

Argued October 2, 2003

Before: RENDELL, WEIS, and
GARTH Circuit Judges.

(Filed: February 23, 2004)

_____

Harold I. Goodman, Esquire (ARGUED)
Raynes, McCarty, Binder, Ross &

Mundy
1845 Walnut Street, 20th Floor
Philadelphia, PA 19103

Attorney for Appellant

Andrew J. Rolfes, Esquire (ARGUED)
Klett Rooney Lieber & Schorling
Two Logan Square, 12th floor
Philadelphia, PA 19103-2756

Attorneys for Appellee Prison Health
Services, Inc.

_____

OPINION
_____

WEIS, Circuit Judge.

In this Title VII
employment discrimination case, we
conclude that when an insolvent
employer sells a substantial portion of its
assets to another corporation, that
company may be subject to successor
liability. We also decide that because
substantial portions of Title VII are
governed by laches, rather than a statute
of limitations, the relation back provision
of Federal Rule of Civil Procedure
15(c)(3) does not apply to the joinder of
the successor corporation as an
additional defendant.

Plaintiff was employed by

defendant Correctional Services, Inc. ("Correctional"), from 1991 until she was discharged in 1996. Correctional was a subchapter S corporation engaged in the business of supplying medical services to incarcerated inmates in several states. Dr. Kenan Umar and his son Emre Umar each held 50% of the stock.

Alleging gender discrimination, plaintiff exhausted EEOC administrative requirements and then filed a complaint in the District Court in May 2000, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and the Pennsylvania Human Rights Act, ("PHRA"), 32 Pa. Cons. Stat. Ann. § 951, et. seq. Unknown to plaintiff at the time, Correctional had agreed in March 2000 to sell a substantial amount of its assets to Prison Health Services ("Prison"), an organization in a similar business. These assets consisted primarily of contracts with various states to provide medical services to prisoners.

The sales agreement disclaimed Prison's potential liability for certain law suits and EEOC claims pending against Correctional. Specifically mentioned were discrimination claims brought by the plaintiff and two other individuals. The agreement also provided for the creation of an "oversight committee," which was to be responsible for disbursing the $14 million proceeds from the sale to creditors of Correctional. The committee was specifically directed to pay $500,000

each to Dr. Umar and his son.

According to the deposition of Dr. Kenan Umar, the fund was exhausted in August 2000. After that time, however, it appears that Prison paid some debts of Correctional in order to maintain credibility with the Commonwealth of Pennsylvania. The contract between the Commonwealth and Correctional was one of the assets that had been sold to Prison. Other efforts at collection of receivables and payment of creditors were still underway at the time of Dr. Umar's deposition in February 2001. Nonetheless, he stated that Correctional was "financially defeated" by that point, and that it owed more than it could collect.

In December 2000, counsel who had been retained to defend Correctional in this litigation filed a petition to withdraw his appearance, citing the inability of his client to pay its legal fees. Plaintiff asserts that this event was the first notice she received of the sale of assets and Correctional's insolvency. After a hearing, the District Court granted counsel's withdrawal motion.

Soon thereafter, on March 14, 2001, plaintiff moved to join Prison as an additional defendant, alleging that it was a successor to Correctional. The District Court sustained Prison's objections and denied the motion on the ground that Prison should not be held responsible on a successor liability theory.

2

After the District Court denied reconsideration or certification of a controlling issue of law, Correctional stipulated that judgment be entered against it and in favor of plaintiff for $150,000. In addition, it was agreed that plaintiff would not sue or seek to collect the judgment from Dr. Umar or any other individual associated with Correctional. In accordance with the stipulation, the District Court entered judgment on August 28, 2002.

Plaintiff has appealed, arguing that a Title VII claimant in appropriate circumstances may be entitled to the benefit of successor liability. Prison maintains that Correctional was in a precarious financial position before March 2000 and the sale of assets had no real effect on the plaintiff's ability to recover money damages. Thus, Prison asserts that successor liability should be inapplicable in this instance. Prison also contends that this Court lacks jurisdiction because the plaintiff consented to the judgment against Correctional and, in the alternative, that plaintiff's claim is time-barred because the relation-back provision of Federal Rule of Civil Procedure 15(c)(3) is not applicable.

I.

We will first address the contention that we lack appellate jurisdiction because the order of the District Court refusing joinder of an additional party is interlocutory. Ordinarily, such an order does not

support appellate jurisdiction under 28 U.S.C. § 1291. Lockett v. General Loan Finance Co. of Downtown, 623 F.2d 1128 (5th Cir. 1980); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.18 (2d ed. 1991 ed.). Here, however, the judgment against Correctional gives us jurisdiction. Although entered by consent, it is unconditional, and will remain undisturbed no matter what our ruling on the interlocutory order denying the joinder of Prison. See Bethel v. McAllister Bros., 81 F.3d 376 (3d Cir. 1996). See also Kahn v. Chase Manhattan Bank, 91 F.3d 385, 388 (2d Cir. 1996).

Prison cites Federal Home Loan Mortgage Corp. ("Freddie Mac") v. Scottsdale Ins. Co., 316 F.3d 431 (3d Cir. 2003), and Verzilli v. Flexon, Inc., 295 F.3d 421 (3d Cir. 2002), where we concluded that a consent judgment was conditional and therefore not final. As we observed in Verzilli, a party's standing to appeal a consent judgment requires a reservation of that right. Verzilli, 295 F.3d at 423. The intention to appeal was not included in the stipulation here, but it was made clear in the letter by plaintiff's counsel to the District Court forwarding the stipulation for approval and filing.

In the letter, counsel explained that the consent judgment would "permit Ms. Brzozowski to take an appeal of the final judgment to pursue her successor liability claim against

3

Prison Health Services, Inc." Although it would have been the better practice to add a statement to that effect in the stipulation itself, we are satisfied that the letter was adequate to establish the plaintiff's intent to appeal. We conclude, therefore, that the objections to our jurisdiction must be denied.

## II.

The substantive aspects of the plaintiff's appeal challenge the District Court's refusal to apply the successor liability doctrine. At common law, where one corporation sells or transfers all or a substantial part of its assets to another, the transferee does not become liable for the debts and liabilities, including torts, of the transferor. Poulis v. Clark Equipment Co., 802 F.2d 75 (3d Cir. 1986). There are certain exceptions to that general rule. A purchaser may be liable where it expressly assumes liability, the transaction amounts to a consolidation or merger, the transaction is fraudulent and intended to escape liability, or the purchaser is a mere continuation of the seller. 15 Fletcher, Cyclopedia of the Law of Private Corporations, § 7122 (rev. perm. ed. 1983).

The Supreme Court has expanded the common law rule in the field of labor relations. In Golden State Bottling Co. v. NLRB, 414 U.S. 168 (1973), the Court recited the general sucessorship principle but found that federal labor relations policy required consideration of additional factors. For example, when a successor continues to operate the business without substantial change, the employees will assume that their job situations will also remain the same and that past unfair labor practices will be remedied. Failure to meet these expectations may well result in the labor unrest which federal labor policies are designed to avoid. Id. at 425.

Moreover, the avoidance of labor strife, prevention of a deterrent effect on rights granted employees under the National Labor Relations Act, and protection for victimized employees are important goals which can be achieved at minimal cost to a successor. The expense resulting from successor liability can be considered in setting the price paid for the business, or through the inclusion of an indemnity clause in the purchase agreement. Id. at 425.

Similarly, in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549 (1964), the Court recognized that employees and their union generally do not take part in the negotiations resulting in a change of corporate ownership and, thus, are placed at a disadvantage. As a result, the objectives of national labor policy must balance an employer's option to rearrange its business with "some protection for employees from a sudden change in the employment relationship." Id. at 549

In EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086 (6th Cir. 1974), the Court of Appeals noted that Title VII was molded to a

4

large degree on the National Labor Relations Act, including its relief provisions. The Court specifically noted "the emphasis that both Acts place on extending protection to and providing relief for the victims of prohibited practices," and concluded that this federal policy is "sufficient, in our view, to warrant imposing liability on a corporate successor for Title VII violations of the predecessor company." Id. at 1091. However, liability in this context "must be determined on a case-by-case basis." Id.

In Rego v. ARC Water Treatment Co. of Pennsylvania, 181 F.3d 396 (3d Cir. 1999), we recognized that, in employment discrimination cases, "the doctrine of successor liability applies where the assets of the defendant-employer are transferred to another entity." Rego, 181 F.3d at 401. An aggrieved employee may enforce a claim or judgment against a successor that would have been valid against the predecessor. The doctrine is "derived from equitable principles, and fairness is the prime consideration in its application . . ." Id. at 401.

Citing Criswell v. Delta Airlines, Inc., 868 F.2d 1093, 1094 (9th Cir. 1989), Rego listed three principal factors applicable to successor liability in the employment discrimination field: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the

predecessor to provide adequate relief directly." Id. at 401. This Court has committed itself to recognizing successorship liability in the appropriate Title VII context.[1] Although the underpinnings of successor liability have been derived from equitable principles, they are nonetheless legal considerations which, when satisfied as they are here, warrant the application of the doctrine.

The plaintiff's motion for permission to file an amended complaint alleges that each of the Rego tests is met. Notice is not an issue; the agreement of sale between Prison and Correctional specifically refers to the plaintiff's claim. Prison assertedly has continued Correctional's operations and work force. Correctional's financial debacle makes it unable to satisfy the plaintiff's monetary claims and it cannot reinstate her.

We cannot discern any undue prejudice to the imposition of successor liability should plaintiff be

---

[1] Other Courts of Appeals have articulated a similar view. See, e.g., Rojas v. TK Communications, Inc., 87 F.3d 745 (5th Cir. 1996) (discussing successor liability in the Title VII context); EEOC v. G-K-G, Inc., 39 F.3d 740 (7th Cir. 1994) (same); Slack v. Havens, 522 F.2d 1091 (9th Cir. 1975) (same); Trujillo v. Longhorn Mfg. Co., Inc., 694 F.2d 221 (10th Cir. 1982) (same); In re Nat'l Airlines, Inc., 700 F.2d 695 (11th Cir. 1983) (same).

able to establish the validity of her claim. And, because the potential for this obligation has been well-established in the law for some time, there is nothing unfair about its application at this juncture. We note that Prison included an indemnity clause in the agreement of sale. Realistically, it is probably of no value now, but the existence of such a provision was cited in <u>Golden State Bottling Co.</u> as a factor supporting successor liability. Prison might have made provisions for meeting Correctional's obligation to plaintiff through a lower price or an escrow arrangement. On the other hand, the plaintiff had no knowledge of the asset sale and no opportunity to protect her claim. The fact that Prison did not take appropriate steps to insulate itself does not serve to make application of successor liability unfair in the circumstances. Prison had means at its disposal to anticipate such a situation and offset expected costs associated with a potential claim like that of the Plaintiff.

We are struck by the agreement's provision for establishment of an interim committee to oversee the distribution of the $14 million sale proceeds. This arrangement provided an opportunity for Prison to guard itself to some extent from claims like that of plaintiff. In this connection, too, a reasonable person might question the payment of $1 million to Dr. Umar and his son, the two stockholders of Correctional, without any consideration of the plaintiff's claim.

Relying on the opinion of the Court of Appeals for the Seventh Circuit in <u>Musikiwamba v. Essi, Inc.,</u> 760 F.2d 740 (7th Cir. 1985), the District Court concluded that enforcing successor liability in the case before us would be unfair. In <u>Musikiwamba</u> the Court of Appeals stated that, "[u]nless extraordinary circumstances exist, an injured employee should not be made worse off by a change in the business. But neither should an injured employee be made better off." <u>Id</u>. at 750. The District Court reasoned that here "successor liability should not be imposed if the predecessor was in financial ruin prior to, and not as a result of, a sudden sale of assets." The Court believed that giving an employee the right to pursue a claim against the successor in this situation does not protect preexisting rights, "but instead creates new rights."

Preliminarily, we note that the Court of Appeals for the Seventh Circuit in a later opinion substantially weakened the comment it made in <u>Musikiwamba</u>. In <u>EEOC v. Vucitech</u>, 842 F.2d 936, 946 (7th Cir. 1988), the Court wrote, "[w]e do not understand these decisions to have imposed an ironclad requirement in all cases of successor liability." Rather, emphasis should be on balancing the interest in "sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets." <u>Id</u>. Moreover, no other court has adopted an expanded view of successor liability

similar to the one espoused by Musikiwamba.

Concededly, the language in Musikiwamba is somewhat confusing, at least when read as an assertion that it is somehow unfair to provide a plaintiff with a better chance of recovering damages in a Title VII case from a successor rather than a penniless predecessor. To the extent that the plaintiff gains another source for satisfaction of her claim, of course, she is better off than the claimant whose only recourse is against a defunct or insolvent defendant. However, the mere substitution of a responsible defendant for an insolvent one is not a basis for denying successor liability.

The notion that successor liability cannot be invoked where it would leave the creditor "better off" is a curious one. The doctrine of successor liability is premised on the idea that the creditor cannot obtain satisfaction from the predecessor. To read this factor, or to impose a new one to require a court to look at whether the creditor is better off, seems to undermine the basic rationale underlying the doctrine. Moreover, we note that, as a factual matter, there was money available here for creditors that was disbursed without regard to the possibility that the plaintiff might succeed in her claim.

Although we do not agree with the District Court's application of Musikiwamba, there is an area where it might have some relevance: the establishment of liability for the alleged wrongful act. In that setting, a plaintiff's claim should not be weakened or improved by presenting it against the successor rather than the guilty predecessor whose wrongdoing underlies the claim.

We conclude that the District Court erred in refusing to allow joinder of Prison as an additional defendant. The plaintiff should be given the opportunity to establish her claim of successor liability. We caution, however, that should the cause continue to the merits, the plaintiff may not simply rely on the consent judgment arranged with Correctional. Prison was not a party to the stipulation for a judgment and must be afforded the opportunity to defend itself against the claim *de novo*.

### III.

Prison contends that as a separate and independent ground the District Court should be affirmed because the plaintiff's effort to add Prison as a defendant was untimely and the claim would not relate back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(3). Conceding that the original complaint was filed against Correctional within the 90-day "limitations period" set out in 42 U.S.C. § 2000(e)-5(f)(1),[2] Prison argues,

---

[2] The relevant portion of that statute states that "if a charge filed with the Commission ... is dismissed by the Commission, or if within one

7

however, that the time had expired as to derivative claims that could be brought against it as a successor.

Federal Rule of Civil Procedure 15(c)(3) provides that an amendment to a complaint relates back to the date of the original pleading when (1) permitted by the statue of limitations applicable to the action; (2) the claim or defense arose out of the occurrence set forth in the original pleading; or (3) the amendment changes a party and the foregoing (2) is satisfied. When "relation-back" is based on (3), the new party must also have received notice of the suit within the period set under Rule 4(m), must not be prejudiced in maintaining a defense, and should have known that, but for a mistake in identity, the suit would have been brought against it.

Prison asserts that it had no notice of the lawsuit within the 120-day period under Rule 4(m). In essence,

Prison is contending that the 90-day period is a statute of limitations for Title VII claims, and plaintiff's failure to comply with Rule 15(c)(3) bars relation back.

The basic flaw in Prison's argument is that Title VII does not contain a statute of limitations applicable to joinder in the situation here.

Title VII sets a 300-day time limit after the discriminatory action occurred to present a claim to the EEOC, and a 90-day period for filing suit in the District Court after receipt of a notice of right-to-sue letter from the agency. The Act does not address the question presented here – whether an additional defendant may be joined after the 90-day period has expired.

Generally, in federal litigation, if Congress does not provide a limitations period , courts look to analogous state statutes for the appropriate time within which a suit must be brought.[3] Title VII is an exception to that policy. In <u>Occidental Life Ins. Co. v. EEOC</u>, 432 U.S. 355 (1977), the Court held that absorption of state limitations

_____

hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section,... [or] has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved..." 42 U.S.C. 2000(e)-5(f)(1).

_____

[3] In 1990, Congress enacted 28 U.S.C. § 1658 providing that except as otherwise provided by law, a four-year statute of limitations would apply to the civil actions commenced thereafter. It was amended in 2002 with respect to securities litigation. The statute has no application to Title VII, which was enacted before 1990.

would be inconsistent with the congressional intent underlying Title VII. That case was not a suit by an individual, but by the EEOC which is not bound by the 90-day limitation of Title VII. Nevertheless, the refusal to look to state statutes of limitations has been cited in individual suits as well. See, e.g., Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465 (3d Cir. 2001); Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publishing Co., 839 F.2d 1147 (6th Cir. 1988) (en banc).

Just as MacMillan Bloedel held that a plaintiff need not repeat the administrative process for the benefit of a successor corporation, we see no reason why the 90-day restriction must be applicable to a defendant joined after the plaintiff has timely filed suit against the original employer. See MacMillan Bloedel, 503 F.2d at 1093. The plaintiff here "name[d] those who were known to [her] and could have been charged during the period of limitations," and requiring more could encourage evasion through corporate transfers and would frustrate the equitable power of the Court to make plaintiff whole. Id.

Courts have strictly construed the 90-day limitations period against plaintiffs who either misnamed the appropriate party in their complaint, see e.g., Williams v. Army & Air Force Exchange Serv., 830 F.2d 27 (3d Cir. 1987), or have otherwise entirely failed to meet the filing requirements in the statute. See Baldwin Co. Welcome Center v. Brown, 466 U.S. 147 (1984).

Those cases involved situations in which the plaintiff did not file a proper complaint within the 90-day period and are thus distinguishable from the litigation here where the original complaint was timely filed.

Generally, when no specified or analogous statute of limitations applies to a cause of action, laches must be considered. A Title VII defendant who has been prejudiced because of a delay in the administrative process does have the right to invoke the equitable defense of laches. "In addition to other equitable defenses . . . an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002). This Court, along with a number of other Courts of Appeals, has cited that principle in cases where the EEOC has unduly delayed an individual claimant's law suit before issuing a right-to-sue letter. Waddell v. Small Tube Produce Products, Inc., 799 F.2d 69 (3d Cir. 1986).[4]

---

[4] Other cases of administrative delay invoking laches with differing results are Bernard v. Gulf Oil Co., 596 F.2d 1249 (5th Cir. 1979); Cleveland Newspaper Guild, Local 1 v. The Plain Dealer Pub. Co., 839 F.2d 1147 (6th Cir. 1988); Jeffries v. Chicago Transit Authority, 770 F.2d 676 (7th Cir. 1985); Brown v. Continental Can Co.,

9

The application of laches is in accord with Title VII, which "vests District Courts with broad discretion to award 'appropriate equitable relief to remedy unlawful discrimination.'" Local 28 of the Sheet Metal Workers' Int'l v. EEOC, 478 U.S. 421, 446 (1986). The Courts are empowered to order "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees . . . or any other relief as the court deems appropriate. 42 U.S.C. § 2002(e)-(5)(g)." Id. at 466.

Prison is not left without a defense. When laches applies, a plaintiff may not be entitled to relief if her conduct of the case has improperly and substantially prejudiced the other party. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975). In Jeffries v. Chicago Transit Authority, 770 F.2d 676 (7ᵗʰ Cir. 1985), the Court held that the plaintiff had inexcusably failed to prod the excessively slow administrative proceedings and the delay materially prejudiced the defendant. Accordingly, the plaintiff was found guilty of laches. In National Assn. of Gov't Employees v. City Public Serv. Board, 40 F.3d 698 (5ᵗʰ Cir. 1994), on the other hand, the Court

765 F.2d 810 (9ᵗʰ Cir. 1985); Brown-Mitchell v. Kansas City Power & Light Co., 267 F.3d 825 (8ᵗʰ Cir. 2001); Howard v. Roadway Express, Inc., 726 F.2d 1529 (11ᵗʰ Cir. 1984); Rozen v. District of Columbia, 702 F.2d 1202 (D.C. Cir. 1983).

emphasized that there must be more than inexcusable delay. Plaintiff must also show that the delay caused a disadvantage in establishing and asserting a defense.

The relation back provisions of Rule 15 are primarily concerned with alleviating unfair prejudice in circumstances involving statutes of limitations. It has no controlling force where, as here, a defendant's remedy is provided by the equitable doctrine of laches.

In this case, the timeliness issue in terms of the 90-day period in the context of a statute of limitations was raised in the District Court, but it was not ruled upon. On remand, the parties may bring the issue to the court's attention. As we observed in Waddell, the decision to consider a laches defense is within the sound discretion of the trial court which, of course, must make the requisite findings. The District Court must consider whether the plaintiff's conduct was unreasonable and whether the defendant was materially prejudiced.

Accordingly, the order denying plaintiff the right to join Prison as an additional defendant is reversed, and the case is remanded to the District Court for further proceedings consistent with this Opinion.

10

Garth, Circuit Judge, dissenting:

The majority of this panel has remanded Ms. Brzozowski's case to the District Court for further inquiry into the timeliness of her attempt to amend her Complaint to add Prison as a defendant.[5] I am pleased that the majority has seen fit to remand, but distressed that it has not affirmed *in toto* the District Court's judgment which denied Ms. Brzozowski relief. I therefore respectfully dissent.

Considering (1) the equitable nature of the "successor doctrine," (2) the prejudice that Prison would suffer if Ms. Brzozowski were allowed to amend her Complaint, and (3) the inescapable conclusion that Ms. Brzozowski's desire to add Prison as a defendant represents the paradigm search for the deepest available pocket, it is evident to me that the District Court correctly denied Ms. Brzozowski's motion to join Prison as an additional defendant and that Prison should prevail. The polestar of the "successor doctrine" is *equity*, and I suggest strongly that *equity* has not triumphed in the opinion of the majority.[6]

I.

"Equity" has been said to be "the body of principles constituting what is fair and right . . . the recourse to principles of justice to correct or supplement the law as applied to particular circumstances." Black's Law Dictionary 560 (7th ed. 1999). As this Court has stated, successor liability is a doctrine derived from equitable principles, and the principle of fairness is the prime consideration in its application. *Rego v. ARC Water Treatment Co. of Pa.,* 181 F.3d 396, 401 (3d Cir. 1999). That doctrine, however, has necessarily been qualified. In *Ed*

---

[5] The majority's opinion has referred to CPS, Ms. Brzozowski's original employer and the seller of assets, as "Correctional." It has also referred to the defendant-successor as "Prison." For ease of reference, I have adopted the same nomenclature.

[6] The policy underlying the successor doctrine is designed to protect an employee when the ownership of his employer suddenly changes. *See, e.g., Rojas v. TK Communications, Inc.,* 87 F.3d 745, 750 (5th Cir. 1996) ("Although developed in the context of labor relations, the doctrine of successor liability has been extended to claims asserted under Title VII and related statutes. . . . [T]he successor doctrine arises in the context of discrimination cases in situations where the assets of a defendant employer are transferred to another entity. Thus, the purpose of the doctrine is to ensure that an employee's statutory rights are not "vitiated by the mere fact of a sudden change in the employer's business.""). But by the same token, while an employee's right should not be diminished, neither should it be enhanced. *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir. 1985)

11

*Peters Jewelry Co., Inc. v. C&J Jewelry Co., Inc., et al,* 124 F.3d 252, 274 (1st Cir. 1997)*,* the First Circuit said that "the successor doctrine is derived from equity principles and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief."

The Seventh Circuit added to the equitable gloss of the successor liability doctrine when, using some of the same language, it stated:

> the successor doctrine is derived from equity principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor would not have the opportunity to protect itself.

*Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir. 1985). Other courts have chimed in to the same effect. *See, e.g., Criswell v. Delta Air Lines,* 868 F.2d 1093, 1094 (9th Cir. 1989) (citing to *Musikiwamba,* 760 F.2d at 750).[7]

---

[7] The majority acknowledges that the successor doctrine has equitable "underpinnings," but asserts that the factors employed in making a successor liability

In *Rego,* where we adopted the doctrine of successor liability, we specified that the District Court should analyze a successor claim by considering three principal factors before making a successor liability determination: (1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor employer of its predecessor's legal obligation; and (3) *ability of the predecessor to provide adequate relief directly. Rego,* 181 F.3d at 402 (emphasis added).

To this extent and to this point, the majority opinion and I are in complete agreement. However, where we part company is in our analysis of the third prong of *Rego.* That is, could financially insolvent Correctional (the predecessor and Ms. Brzozowski's original employer) provide adequate relief directly to Ms. Brzozowski? Is it fair and equitable to burden Prison with the obligation to provide relief to Ms. Brzozowski when that relief was the

---

determination are not equitable but "legal determinations." Maj. Op. at 11. These legal considerations are not defined, and it is unclear from whence they are derived or why they overrule, or allow the majority to overlook, the inherent inequity of the result reached here.

Moreover, as the majority opinion points out, because of the equitable nature of the successor doctrine, it is *laches,* and not the statute of limitations, which must be applied in cases such as this one, which seek equitable relief.

primary responsibility and charge of her original employer, Correctional? I answer these questions by concluding that the principles of justice – those principles which embrace *fairness* and *rightful* conduct – as applied to the particular circumstances of this case, *require* that the successor doctrine should not place Ms. Brzozowski in a better position than she was in before Prison entered the arena.

The majority dismisses this crucial principle, imbedded in the third prong of *Rego*'s formula (i.e., the ability of the predecessor to provide relief directly), as undermining the rationale upon which the successor doctrine is based. *See* Maj. Op. at 15. I cannot agree. The majority fails to recognize the importance of Correctional's initial responsibility to discharge Ms. Brzozowski's claim if she were successful in her discrimination action, particularly in light of Correctional's receipt of $14 million and the Umars' receipt of $1 million. Moreover, Correctional had agreed with Prison that any liability that might arise out of Ms. Brzozowski's claim was to be Correctional's responsibility. The majority opinion's position completely eliminates the third prong of this Court's *Rego* doctrine, which looks first to the predecessor – here, Correctional – for relief.

For successor liability to attach, we have provided in *Rego, supra,* and I have emphasized, that the Court must look to the "ability of the predecessor to provide adequate relief directly." This is a mandate of our jurisprudence. Yet the majority opinion, without recognition of this standard, provides ". . . the mere substitution of a responsible defendant [Prison] for an insolvent one [Correctional] is not a basis for denying successor liability." Maj. Op. at 15. I suggest that a re-writing of an established formula adopted by this Court can be accomplished only by an *en banc* Court. *See* 3d Cir. Internal Operating Procedures § 9.1 (". . . [N]o subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.").

II.

Judge Swygert, writing in *Musikiwamba,*[8] held that while an employee injured by her original employer (here Correctional) should not be made worse off after the employer's successor (here Prison) took over, neither should she profit and be better

[8] The majority opines that *EEOC v. Vucitech,* 842 F.2d 936, 946 (7th Cir. 1988), weakened the doctrine of *Musikiwamba* when it emphasized that a balancing test should gloss the *Musikiwamba* successor doctrine. *See* Maj. Op. at 14. While I do not read *Vucitech* in the same illiberal manner as the majority does, I suggest that under any balancing standard, the balance ends up in favor of Prison under the circumstances which I outline here.

off with a successor who was "better heeled."

> [A]n injured employee should not be made worse off by a change in the business. *But neither should an injured employee be made better off...* Imposing liability on a successor when a predecessor could have provided no relief whatsoever is likely to severely inhibit the reorganization or transfer of assets of a failing business. A company on the verge of bankruptcy may find itself deluged with meretricious claims for employment discrimination as employees see the prospect of a deep-pocket to provide relief.

*Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750-51 (7th Cir. 1985) (emphasis added).

*Accord EEOC v. Vucitech,* 842 F.2d 936, 945 (7th Cir. 1988) (J. Posner).

Because the successor inquiry is fact-specific, and because its prime consideration is fairness to the parties, *see Rego,* 181 F.3d at 401, 403, it is clear to me that the equities here counsel against holding Prison liable as a successor. I believe that consideration of the following uncontroverted evidence renders a liability determination against Prison thoroughly inequitable – indeed, utterly unconscionable:

1. Correctional, Ms. Brzozowski's original employer, was a failing company and had no assets with which to respond to her claim of discrimination.

2. The District Court found that the financial troubles experienced by the predecessor, Correctional, existed before Correctional sold its assets to the successor, Prison. Because Correctional could not provide any recovery to Ms. Brzozowski before the sale transaction took place, she was not adversely impacted by the sale of assets.

3. The sale of assets did not cause Correctional's inability to provide relief to Ms. Brzozowski, and Correctional's poor financial status remained unchanged after the sale of its assets to Prison.

4. Although Prison paid $14 million as part of the asset

14

purchase, Correctional made no provision to respond to Ms. Brzozowski's claim of discrimination out of those funds.

5. The principals of Correctional, Dr. Kenan Umar and Emre Umar, each received $500,000 from the purchase price of Correctional's assets, but neither of them made any provision out of these monies to respond to Ms. Brzozowski's claim, although the discrimination which Ms. Brzozowski charges occurred during their tenure at Correctional.

6. Astonishingly, Ms. Brzozowski never sought to obtain relief from either of the principals (who were charged with corporate misconduct in state court) by piercing the Correctional corporate veil in order to recover under her claim.

7. Compounding her desire to forego relief from her original employer out of the monies which Correctional received from Prison, was Ms. Brzozowski's agreement not to pursue either Correctional or its principals. Rather, after consenting to a judgment in the sum of $150,000 against Correctional – a judgment which she knew was uncollectible – she agreed to *limit collection of this judgment against Correctional alone and to forego seeking collection of the judgment against Dr. Kenan Umar or any other individual associated with Correctional.* She did so, knowing at the time that Correctional was judgment-proof.

8. These actions were taken by Ms. Brzozowski, Correctional and the Umars, despite the fact that the asset purchase agreement specified that Prison would not be responsible for Ms. Brzozowski's discrimination claim. Indeed, Prison, through the agreement, expressly excluded itself from liability for her claim at the time that it paid

15

Correctional $14 million for its assets.[9]

## III.

The recitation of these uncontroverted facts inexorably leads to the conclusion that it would be inequitable and unfair to hold Prison liable as a successor to Correctional simply in order to enhance Ms.

Brzozowski's ability to collect a money judgment. It is obvious that Ms. Brzozowski, realizing this, decided to amend her complaint to add a deep pocket defendant – in this case, Prison. It is clear to me, as it should be to everyone, that the sale of Correctional's assets to Prison did not and would not have harmed Ms. Brzozowski, and it certainly did not offend *Rego* because it would not make Ms. Brzozowski worse off. And, there is no doubt that Ms. Brzozowski, under her interpretation of successor liability which has been acceded to by the majority of the Court here, will be far better off if Prison's resources are made available to her.

It is also clear that before Correctional (and the Umars) received $14 million from Prison, Correctional had no ability to provide an adequate legal remedy for Ms. Brzozowski because, as the District Court held, Correctional was completely unable to satisfy any judgment that Ms. Brzozowski obtained against it. Accordingly, as the District Court stated and as I agree, the equitable principle – the third prong of *Rego* – which underlies the successor liability doctrine, i.e. protecting employees when the ownership of their employer changes, is not implicated in this case. It should be remembered that Correctional retained liability for Ms. Brzozowski's claim in the asset purchase agreement, but it simply could not and did not provide for any recovery made by Ms. Brzozowski before the sale transaction took place,

---

[9] It is beyond per adventure that Prison would have paid substantially less than the $14 million purchase price for Correctional's assets, had Prison been obliged to respond to Ms. Brzozwski's discrimination claim. The $14 million purchase price was agreed to only after Ms. Brzozowski's suit was specifically excluded in the sales agreement, thereby leaving any judgment obtained by Ms. Brzozowski to be satisfied by Correctional. The majority's assertion that Prison should have anticipated it would be held liable as a successor therefore makes no sense, and leaves no successor entity – a purchaser – with any customary means to exclude claims in a contract of sale with the seller. The majority cites *Golden State Bottling Co., Inc. v. N.L.R.B.,* 414 U.S. 168, 187 (1973), as stating, "the expense resulting from successor liability can be considered in setting the price for the business, or through the inclusion of an indemnity clause in the purchase agreement." Maj. Op. at 9. However, an indemnity agreement with Correctional would have been senseless in light of the financial condition of that company.

16

although it could well have done so after its sale of assets. This fact alone is the critical factor in determining whether successor liability may be imposed.

Dr. Umar testified that Correctional's poor financial status was one of the motivating factors behind the sale of assets to Prison. When the subsequent actions of Ms. Brzozowski, the Umars and Correctional are considered in light of the financially insolvent condition of Correctional (and I have listed those actions above), it is apparent that Ms. Brzozowski now seeks a right which the successor liability doctrine has not afforded her, and to which she is not entitled. She has no right to assess Prison for monetary damages when she could not under any circumstances have received them from her employer, which was the responsible party for any discriminatory acts she suffered.[10]

---

[10] I have difficulty understanding the emphasis that the majority places on "corporate tools at its disposal to effectively anticipate such a situation and offset expected costs associated with a potential claim like that of Ms. Brzozowski." In this case, the parties did utilize their "corporate tools" – did anticipate the Brzozowski situation – did adjust the purchase price because they anticipated that situation, and Prison took every step that it could to ensure that Ms. Brzozowski's claim against the employer which allegedly discriminated against her would be discharged by the discriminating entity. Moreover, it was Correctional that

IV.

I note that Ms. Brzozowski, in her motion to join Prison as an additional defendant, relied upon Fed. R. Civ. P. 20, "Permissive Joinder of Parties." Instead, Fed. R. Civ. P. 15, "Amended and Supplemental Pleadings," would have been the appropriate Rule under which to proceed in this instance. That Rule, however, requires that the newly added defendant has received notice and will not be prejudiced. In this case, there is no question that Prison had received notice of Ms. Brzozowski's claim because Prison had expressly disclaimed responsibility for it in the sales agreement. By doing so, Prison did not have to reserve monies for that claim,

---

improperly appropriated and distributed the monies that were paid, and it was because both Correctional and its principals "improperly appropriated" the $14 million purchase price (including the $500,000 paid to each of the Umars) that resulted in an inability to satisfy Ms. Brzozowski's claim.

The third prong of *Rego* provides, as I have stated, that before a successor can be liable, it must be shown that there was an "ability of the predecessor [in this case, Correctional] to provide adequate relief directly." The majority opinion appears to abandon this third factor when it inappropriately analyzes the facts of this case where there is no speculation whatsoever that Brzozowski would be better off by ignoring the predatory conduct of Correctional and its principals and pursuing Prison.

17

and consequently did not reduce its $14 million purchase price. See note 5, *supra.*

I make mention of this here not because I make an issue of the manner in which, or the Rule by which, Ms. Brzozowski has sought to join Prison as a defendant in this action. Rather, I do so because Rule 15(c)(3) and the "successor doctrine"'s application here to Prison, which was rejected by the District Court and by me, emphasize that there should be no prejudice to the defendant who is joined. Here, as I have pointed out, Prison had no part in any discriminatory actions claimed by Ms. Brzozowski. In addition, Prison recognized that she had brought a claim against Correctional, and therefore sought to relieve itself of any obligation to her. In such a situation, it is quite understandable why the District Court Judge, acknowledging the prejudice which Prison would suffer, refused to add Prison as a defendant. How can one say she abused her discretion? I, for one, cannot.

In light of the uncontested facts which I have related, it is apparent that by failing to consider these circumstances, the majority has inequitably ordered Prison to respond, to its detriment and prejudice, to Ms. Brzozowski despite the third prong of the *Rego* successor liability analysis. If the successor liability doctrine is rooted in equitable principles, as it is, then it is evident to me that the equities all lie in Prison's favor, and none lie in favor of Ms. Brzozowski or her original employer, Correctional.

I therefore respectfully dissent from the majority's judgment, which would hold Prison liable, subject only to a further analysis concerning the relevance of laches or the statute of limitations – an analysis in which I do not engage, as I see no need for it.