**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3495
_____

DARREN JOHNSON,
                                            Appellant

v.

DOCTOR STEMPLER; DOCTOR DENNIS MOYER, COMMISSIONER
MARTIN HORN; PRISON HEALTH SERVICES, INC.;
CORRECTIONAL PHYSICIAN  SERVICES, INC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-00-cv-00711)
Magistrate Judge:  Honorable Jacob P. Hart (by consent)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2011
Before:  BARRY, JORDAN AND GARTH, Circuit Judges

(Opinion filed: April 13, 2011)
_____

OPINION
_____

PER CURIAM

        Darren Johnson, a prisoner of the Commonwealth of Pennsylvania, appeals from

an order denying his Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(2).

We will affirm.

I.

In 1999, while incarcerated at SCI-Graterford, Johnson suffered a knee injury. He filed suit under 42 U.S.C. § 1983 in 2000, claiming that he had received inadequate and delayed treatment in violation of his rights under the Eighth Amendment to the United States Constitution, which led to permanent damage. See Johnson v. Stempler, No. 00-711, 2005 U.S. Dist. LEXIS 765, at *1–2 (E.D. Pa. Jan. 18, 2005).

Among those named in the suit as defendants were Correctional Physician Services, Inc. (CPS) and Prison Health Services, Inc. (PHS), a subsidiary of American Service Group, Inc. (ASG). CPS is a "private corporation [that was] contracted to provide medical services for inmates at SCI-Graterford," by employing doctors as independent contractors for on-site care and by arranging aspects of off-site care when necessary. See Johnson v. Stempler, No. 00-711, 2007 U.S. Dist. LEXIS 21726, at *2 (E.D. Pa. Mar. 27, 2007).[1] PHS replaced CPS as the medical contractor for the institution pursuant to an Asset Purchase Agreement (APA) executed on March 29, 2000, which transferred CPS's assets to PHS in exchange for $14,000,000, some of which was to be used to compensate CPS's two shareholders and some of which was to be reserved for CPS's creditors. The two shareholders of CPS were also to take roles as consultants at PHS. Significant to the instant appeal, PHS agreed to assume "all liabilities arising after

---

[1] CPS and PHS, despite being private entities, are subject to suit under 42 U.S.C. § 1983 because they exercise powers that were traditionally the prerogative of the state, act in close concert with state officials, and are significantly entangled with traditional state activities. See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

the Closing Date with respect to the provision of services to inmates covered by the PA Contract," and explicitly declined to assume "any liability or obligation of [CPS] whatsoever which accrued at any time on or prior to the Closing Date, whether or not such liability or obligation arises prior or subsequent to the Closing Date, including . . . litigation or claims." APA §§ 3.1, .3. Following the transfer of assets, it appears that CPS was quickly depleted of any remaining funds and ceased to function.[2]

On January 18, 2005, the District Court partly granted defendants' motion for summary judgment, dismissing all claims against PHS but sustaining some claims against CPS. In dismissing the claims against PHS, the District Court reasoned that Johnson's injury predated PHS's assumption of duties at Graterford; as Johnson "offered no evidence to show that PHS was involved with medical care at SCI-Graterford at that time, [PHS could] bear no liability for the events giving rise to this suit." Stempler, 2005 U.S. Dist. LEXIS 765, at *16–17.

Counsel was then appointed to represent Johnson. Following a protracted discovery battle—which led the District Court to sanction CPS on January 30, 2006— Johnson belatedly acquired access to the APA. On March 1, 2006, he filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(2), arguing that the APA demonstrated PHS's assumption of relevant liabilities from CPS and asking for PHS to be reinstated as

---

[2] For example, on September 6, 2007, counsel for CPS requested to withdraw, as he had been informed by the former president and shareholder of CPS that CPS had "no assets and no ability to pay him for the defense." Mot. of Alan S. Gold, Esq., to Withdraw ¶ 6, ECF No. 155.

a defendant in the suit. The District Court denied this motion on October 5, 2006, observing that it was untimely filed but also briefly addressing the merits.

CPS filed a second motion for summary judgment, which was denied by the District Court on March 27, 2007. Johnson secured a default judgment against CPS on March 28, 2008, see Order, ECF No. 165, and was awarded $65,000 in damages.[3] He appealed the adverse rulings, and while we affirmed the majority of the District Court's dispositions, we vacated its denial of Johnson's Rule 60(b)(2) motion; as Rule 60(b) applies only to final judgments, "the one-year time limitation imposed by the Rule does not apply to situations where the order in question was not properly appealable in the first place." Johnson v. Stempler, 373 F. App'x 151, 156 (3d Cir. 2010).

On remand, the District Court considered three issues: 1) whether the contractual language of the APA suggested an assumption of responsibility for suits arising out of pre-agreement conduct; 2) whether the doctrine of de facto merger established PHS as the successor in interest to CPS, regardless of the APA; and 3) whether this Court's holding in Brzozowski v. Correctional Physician Services, Inc., 360 F.3d 173 (3d Cir. 2004), which found potential for successor liability in a Title VII claim involving the selfsame APA in controversy in the instant suit, would compel a finding of PHS as the successor in interest to CPS. See id. at 179. The District Court held that 1) the plain language of the

---

[3] The default judgment stemmed from CPS's failure to acquire new counsel after the withdrawal of its prior counsel. CPS and its representatives also failed to participate at the hearing to determine appropriate damages. See 5/28/2008 Tr. 3:10–15, ECF No. 177.

4

APA did not support an assumption of liability, 2) no de facto merger existed under either Pennsylvania law or federal common law, and 3) Brzozowski was not analogous and did not establish successor liability in all situations arising out of this APA. As "discovery of the Asset Purchase Agreement would not have changed the outcome of trial under Rule 60," the District Court denied the motion. Johnson v. Corr. Physician Servs., 725 F. Supp. 2d 481, 490–91 (E.D. Pa. 2010). This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291,[4] and review the District Court's denial of a Fed. R. Civ. P. 60(b)(2) motion for abuse of discretion. Compass Tech. v. Tseng Lab., 71 F.3d 1125, 1130 (3d Cir. 1995). "An abuse of discretion may be found when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Morris v. Horn, 187 F.3d 333, 341 (3d Cir. 1999) (internal quotations, citations omitted).

## III.

"The general rule of corporate successorship accepted in most states is non-liability for acquiring corporations . . . [but] [t]he purchaser may be liable where: (1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the

---

[4] Johnson filed a Fed. R. Civ. P. 60(b)(6) motion on August 15, 2010; accordingly, our jurisdiction was forestalled pursuant to Fed. R. App. P. 4(a)(4)(B)(i). See Carrascosa v. McGuire, 520 F.3d 249, 253 (3d Cir. 2008). The District Court denied the motion on August 31, 2010. The 60(b)(6) motion is not before us, as Johnson has not amended his Notice of Appeal. See Fed. R. App. P. 4(a)(4)(B)(ii).

transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company." United States v. Gen. Battery Corp., 423 F.3d 294, 305 (3d Cir. 2005) (citations omitted). Johnson raises options (1), (2), and a variation of (4).

A) Contract Interpretation and Liability under the APA

Johnson argues that the APA proves that PHS assumed a financial obligation for his injury, as the "liability" arising therefrom—which he defines as the legal obligation of an actual judgment—did not materialize until the default judgment was entered against CPS, long *after* the execution of the APA.[5] PHS counters that this definition of "liability" is unworkable and was not contemplated by the parties to the agreement. The District Court agreed with PHS, finding Johnson's proffered definition of liability (derived from its Black's Law Dictionary entry) to be unduly cumbersome and ultimately nonsensical in the context of the APA. Johnson, 725 F. Supp. 2d at 487. Accordingly, "PHS [was] not liable regarding the medical care offered to Johnson because it occurred before the closing date." Id.

_____

[5] Johnson also argues that, if liability means "the basis of the claim," he should still prevail, as his § 1983 suit did not mature until after he had exhausted his administrative remedies as required by the PLRA. To the extent that this alternative argument is properly before us, it is meritless, as it is based on a faulty premise. See, e.g., Brown v. Valoff, 422 F.3d 926, 942–43 (9th Cir. 2005) (tolling statute of limitations during exhaustion of administrative remedies); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (same).

6

The "paramount goal of contract interpretation [in Pennsylvania] is to determine the intent of the parties." NOVA Chems., Inc. v. Sekisui Plastics Co., 579 F.3d 319, 323 (3d Cir. 2009) (citations omitted). There is a strong argument to be made that the parties did not wish to subject PHS to suit for violations that occurred before it acquired CPS's assets. For example, the language of section 3.1 of the APA takes pains to distinguish liabilities occurring before and after the closing date from liabilities derived from pre-closing-date responsibilities that become effective only after the closing date. Section 3.1(ii) provides for the assumption of "all accrued current liabilities of [CPS] as of the Closing Date with respect to the Business with respect to payroll and accrued vacation pay to the extent attributable to any payroll period ending after the Closing Date that relates to the operation of the Business prior to and after the Closing Date." By contrast, section 3.1(iii), relied upon by Johnson, only mentions "liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the PA Contract."

We are not unsympathetic to Johnson's argument, especially given the convoluted verbiage of the APA, but our standard of review is not *de novo*, and Johnson has not shown why the District Court's conclusion is either legally erroneous or factually unsupportable. Therefore, we are unable to find that the District Court abused its discretion on this ground.

B) <u>De-Facto Merger</u>

A de facto merger inquiry "investigates whether a transaction labeled 'Asset Purchase Agreement' in fact constituted a merger – a determination that does not arise purely from the agreement itself." <u>Berg Chilling Sys. v. Hull Corp.</u>, 435 F.3d 455, 465 (3d Cir. 2006). Under the majority standard, elements of a de facto merger include: 1) continuity of management, personal, physical location, assets, and general business operations; 2) continuity of shareholders; 3) rapid liquidation of the seller corporation and cessation of business; and 4) uninterrupted continuation of business and assumption of liabilities.[6] <u>Gen. Battery Corp.</u>, 423 F.3d at 305.

We agree with the District Court that there is no evidence of factors 1 and 2. The two shareholders of CPS, while assuming consultancy positions at PHS, took on no equity shares or leadership roles in PHS.[7] The District Court did not abuse its discretion in finding there to be no de facto merger.

---

[6] As observed by the District Court, Pennsylvania explicitly requires the existence of continuity of ownership in order to consider the de facto merger doctrine, although the matter is currently before its Supreme Court. <u>See</u> <u>Fizzano Bros. Concrete Prods. v. XLN, Inc.</u>, 973 A.2d 1016, 1020 (Pa. Super. Ct. 2009), <u>allocatur granted</u>, 994 A.2d 1081 (Pa. 2010).

[7] In fact, it appears that the shareholders started another prison healthcare company in the wake of the CPS sale. <u>See</u> Gary Craig, <u>Lawsuits Entangle Jail-Care Provider</u>, Rochester Democrat & Chron., Mar. 20, 2010.

C) <u>Brzozowski Liability</u>

Lastly, Johnson argued that <u>Brzozowski</u> compels a finding of successor liability. <u>Brzozowski</u> examined the same APA in the context of a Title VII employment discrimination suit, and held "that the District Court erred in refusing to allow joinder of [PHS] as an additional defendant" in a suit against CPS. <u>Brzozowski</u>, 360 F.3d at 179. We agree with the District Court that <u>Brzozowski</u> was premised on the specific concerns raised by employment liability actions, and was indeed based on an analysis of "factors applicable to successor liability *in the employment discrimination field*." <u>Id.</u> at 179 (citing <u>Rego v. ARC Water Treatment Co. of Pennsylvania</u>, 181 F.3d 396, 401 (3d Cir. 1999)) (emphasis added). It does not command a similar outcome here.

IV.

As the District Court did not abuse its discretion in denying the Rule 60(b)(2) motion, we will affirm its judgment. PHS's motion for leave to file an amended appellee brief is denied as unnecessary.