**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1690
_____

JOHN DIAZ,

Appellant
v.

MARY CANINO, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-08-cv-01033)
District Judge: Hon. Cynthia M. Rufe
_____

Submitted under Third Circuit LAR 34.1(a)
October 29, 2012

Before: SLOVITER, AMBRO and ALDISERT, Circuit Judges.

(Filed: October 31, 2012)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

John Diaz, a prison inmate, appeals from a judgment by the United States District Court for the Eastern District of Pennsylvania granting a motion under Rule 12(b)(6), Federal Rules of Civil Procedure. Diaz alleges that Hearing Officer Mary Canino violated his due process rights by denying him a proper misconduct hearing. This appeal requires us to decide whether Diaz had a liberty interest in avoiding 360 days of disciplinary confinement in a Restrictive Housing Unit ("RHU") and whether Canino's participation in Diaz's misconduct hearing, without more, constitutes sufficient personal involvement to state a claim against her for alleged liberty deprivations arising after, and apart from, the disciplinary sentence she issued. The District Court held that Diaz failed to state a claim for which relief could be granted because Diaz had no liberty interest in avoiding 360 days of confinement in RHU and he did not allege sufficient personal involvement on the part of Canino to hold her liable for alleged liberty deprivations occurring after the completion of his disciplinary sentence. We will affirm.

## I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in this case, we will revisit them only briefly.

## A.

On May 16, 2011, Diaz filed a Second Amended Complaint alleging the following pertinent facts, which we assume to be true as required when reviewing a district court's grant of a 12(b)(6) motion to dismiss.

Diaz was an inmate at the Pennsylvania State Correctional Institution in Graterford, Pennsylvania, where he shared a cell with one other inmate. On February 20, 2006, Diaz was removed from his cell and placed in RHU because, according to Correctional Officer Jeffrey McCusker, an informant stated that Diaz was planning to

2

attempt an escape. Upon searching Diaz's cell, correctional officers found items they believed were consistent with a plan to escape, including a map, a description of inmate processing and a particular type of inmate clothing typically issued to inmates with a classification different from that of Diaz.

Officer McCusker filed a misconduct report and a copy was given to Diaz on February 28, 2006. The Misconduct Report charged Diaz with various offenses relating to contraband, conspiracy, solicitation and escape. In an attempt to prepare for his upcoming disciplinary hearing, Diaz requested a copy of the Inmate Handbook and an opportunity to go to the law library. His requests were denied.

On March 2, 2006, Diaz appeared before Hearing Officer Canino. He pleaded not guilty to the charges against him but admitted that the clothing found in his cell belonged to him. Diaz explained, however, that many inmates have different colored hats and pants, implying no inference of a plan to escape could be drawn from the clothing found in his cell that was not issued to him by prison authorities. Canino did not ask Diaz any other substantive questions about the misconduct report nor did she give Diaz an opportunity to call witnesses or present evidence in his defense. She also did not call Officer McCusker as a witness during the hearing but rather interviewed him prior thereto. Canino never spoke directly with the informant.

On March 3, 2006, Canino found Diaz guilty of all charges against him and sentenced him to 360 days in RHU. Canino did not permit Diaz to present evidence or witnesses at the hearing. He spent three days in the RHU at Graterford and was then transferred to the RHU at the Pennsylvania State Correctional Institution in Smithfield, Pennsylvania. Diaz served the remainder of his 360-day sentence in the Smithfield RHU.

Diaz contends that, while in RHU he was exposed to "continuous searches" and

"regular relocation of his cell," and he "was unable to sleep as a result of the lights that remained turned on." App. 30. After leaving RHU, Diaz endured "increased scrutiny by correction officers and prison officials, including but not limited to his cell being relocated on a monthly basis, routine strip-searches, and [an] inability to participate in certain programs and activities."[1] App. 31.

## B.

Alleging the events described above violated his right to due process, Diaz filed state and federal claims against the Commonwealth of Pennsylvania Department of Corrections and against Canino in her official and individual capacities. The District Court dismissed all of Diaz's claims. On appeal, Diaz challenges only one of the dismissals: the District Court's dismissal, under Rule 12(b)(6), of his § 1983 claim against Canino in her individual capacity.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1343. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's decision to dismiss a complaint for failure to state a claim upon which relief can be granted. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a

---

[1] Diaz's Second Amended Complaint, filed May 16, 2011, states that "[a]t all relevant and material times, [Diaz] was an inmate either at SCI Smithfield or SCI Graterford." App. 27. Diaz's Reply Brief, filed May 16, 2012, states that Diaz "continues to suffer on-going injury because he is forced to endure increased scrutiny . . . ." Appellant's Reply Brief at 6. It appears, however, that Diaz is no longer at Smithfield or Graterford, but rather Souza-Baranowski Correctional Center in the Commonwealth of Massachusetts. App. 27. As a result, it is unclear whether Diaz intends for us to consider the current conditions of his confinement at Souza-Baranowski as part of his claim against Canino. This, however, does not affect our analysis. We will therefore refer to Diaz's allegations as though they concern past rather than ongoing harms.

4

claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). We will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted).

III.

The District Court correctly dismissed Diaz's claim against Canino in her individual capacity for failure to state a claim upon which relief can be granted. It did so in two parts. First, the District Court held that Diaz failed to state a due process claim because, contrary to what Diaz alleged, he did not have a liberty interest in avoiding the length and conditions of his confinement in RHU. Second, as to alleged liberty deprivations occurring after his release from confinement in RHU, the District Court held that Diaz failed to allege sufficient personal involvement on the part of Canino to state a due process claim against her in her individual capacity.

A.

As to the length and conditions of Diaz's disciplinary confinement in RHU, we agree with the District Court that Diaz failed to state a claim upon which relief could be granted because he had no liberty interest in avoiding such confinement.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. When bringing a § 1983 suit based on a violation of this Amendment, plaintiffs must identify or

5

allege the deprived protected interest.  See Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1980). Without the presence of a protected interest, a § 1983 due process claim simply cannot stand. See id.

Diaz's suit is not about "life" or "property," so we consider only whether Diaz's Complaint alleged a protected "liberty" interest. A liberty interest may arise from the Constitution itself or "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Diaz's Complaint does not mention any state law or policy but alleges that because of an improper misconduct hearing, he was sentenced to 360 days in RHU, where he was "exposed to continuous searches," subjected to "regular relocation of his cell," and "unable to sleep as a result of the lights that remained turned on." App. 30. This Court, however, has recognized that "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2001) (citing Sandin v. Conner, 515 U.S. 472, 483-484 (1995)). Only if the sanction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" is a protected liberty interest affected.  Sandin, 515 U.S. at 484.

Here, we decide that neither the conditions nor the length of Diaz's confinement in RHU worked an "atypical and significant hardship" on Diaz so as to deprive him of a protected liberty interest. In Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997), we held that an inmate confined to the RHU at Graterford for even longer than Diaz—15 months—was not subjected to "atypical and significant hardship" thereby depriving him of a liberty interest. Although Griffin involved an inmate held in "administrative custody" rather than "disciplinary custody," see id. (applying the Supreme Court's

"atypical and significant hardship" standard to an administrative-custody case), the same reasoning has been applied in the disciplinary-custody context, see Smith v. Mensinger, 293 F.3d 641, 652-654 (3d Cir. 2002) (applying the same "atypical and significant hardship" standard to a disciplinary-custody case and citing Griffin). Additionally, we find nothing in Diaz's Complaint that allows us to infer that the searches, cell relocation, and lights complained of are "atypical" of "the ordinary incidents of prison life." The Complaint simply does not provide any basis by which to compare these conditions with non-RHU custody. Accordingly, we hold that the District Court correctly determined that no protected liberty interest was affected by Diaz's 360-day confinement in RHU.

B.

Nevertheless, Diaz argues that the length and conditions of his RHU confinement do not by themselves define the deprived liberty interest. In an effort to bolster his position that a liberty interest was affected, he contends that deprivations occuring after his release from RHU should also be considered in his claim against Canino. We disagree. As Diaz conceded in his Brief, the deprivations that occurred after his release from RHU were "far outside the scope of an original misconduct sentence." Appellant's Reply Brief at 6. Canino may not, therefore, be held personally liable for such deprivations based solely on her involvement in Diaz's misconduct hearing. Even if we found such post-sentence deprivations affected a liberty interest, Diaz failed to allege sufficient personal involvement by Canino to state a claim against her in her individual capacity.

Diaz's Reply Brief relies heavily on the argument that, unlike the plaintiffs in Sandin, Griffin, and Smith, he has alleged deprivations "extend[ing] well beyond [his] initial disciplinary hold" of 360 days. He argues that even once he completed his 360-day

7

sentence and was released from RHU, he continued to "endure increased scrutiny" as a result of his "guilty verdict."[2] He states such "scrutiny" included "his cell being relocated on a monthly basis, routine strip-searches, and [an] inability to participate in certain activities." App. 31. In support of the argument that such "increased scrutiny" is "atypical" and thereby implicates an alleged liberty interest, Diaz points out that Canino's Brief failed to show any "authority allowing [or] permitting continued mistreatment outside of [an] RHU hold." Appellant's Reply Brief at 6. For the same effect, Diaz also describes the "increased scrutiny" he endured after his release from RHU as "far outside the scope of an original misconduct sentence." Id.

When a plaintiff brings a § 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had "personal involvement" in the alleged wrongs. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, to state a claim against Canino in her individual capacity, Diaz's Complaint needed to contain "allegations of personal direction or of actual knowledge and acquiescence." See

---

[2] We note that Diaz's Second Amended Complaint states he also "has a protected liberty interest in being free from misconduct reports and disciplinary actions that will ultimately affect the duration of his confinement." App. 33. The Complaint, however, does not actually allege that Diaz's duration of confinement will be affected by his "guilty verdict," and moreover, does not contain any facts that would support such an allegation. As a result, even if Diaz does have a liberty interest in "being free from misconduct reports and disciplinary actions that will ultimately affect the duration of his confinement," the District Court's grant of Defendants' 12(b)(6) motion was proper. As the Supreme Court stated in Sandin, "[t]he decision to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." 515 U.S. at 487. Lastly, Diaz did not mention this alleged liberty interest to the District Court in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and he does not mention it to this Court in his briefs on appeal.

id.

When dismissing Diaz's claim, the District Court noted that "Plaintiff does not allege that Canino had personal involvement in [the post-sentence deprivations] or that she had any involvement with Plaintiff's incarceration after she imposed the 360-day sentence." App. 18. Diaz argues that it was not necessary to allege that Canino was involved in the post-sentence deprivations because her involvement in his misconduct hearing alone was sufficient to state a claim. We disagree. As stated before, he himself argues that the alleged post-sentence deprivations fall "far outside the scope of an original misconduct sentence." Appellant's Reply Brief at 6. Therefore, although Canino found Diaz guilty of misconduct and sentenced him to 360 days in RHU, she neither directed nor had knowledge of any post-sentence deprivations Diaz might endure as a result of a guilty verdict. Without alleging that Canino knew Diaz would face "increased scrutiny" "far outside the scope of the original misconduct sentence" rendered by her, or alleging such increased scrutiny is authorized policy,[3] Diaz fails to allege sufficient personal involvement to state a due process claim against Canino in her individual capacity. As the District Court stated, there was other process available to Diaz "to challenge his conditions of confinement at SCI Smithfield . . . against the appropriate prison officials." App. 18.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is needed. The judgment of the District Court will be AFFIRMED.

---

[3] Indeed, Diaz's brief states the contrary is true, that there is no "authority allowing [or] permitting" the "mistreatment" he has endured since leaving RHU. Appellant's Reply Brief at 6.

9