## INJURY TO HEART FROM COLD PLUNGE BATH.

Court of Appeals for Cuyahoga County.

THE NEW AMSTERDAM CASUALTY COMPANY v. CORA BELLE JOHNSON, ADMINISTRATRIX OF CHARLES W. JOHNSON, DECEASED.

Decided, March 3, 1913.

*Accident Insurance—Dilation of Heart Due to Taking a Cold Plunge Bath—Disability Therefrom Held to Have Been Covered by Accident Policy.*

1. Death due to dilation of the heart, caused by a cold plunge bath voluntarily taken, was the result of accidental means within the terms of an accident insurance policy under the circumstances of this case.
2. If an effect has the characteristics of an accident, it is proper to characterize the means producing the effect an "accidental means."

*Seaton & Paine,* for plaintiff in error.
*Ford, Synder & Tilden,* contra.

WINCH, J.; MEALS, J., and GRANT, J., concur.

Error to the court of common pleas.

The original plaintiff in this case was Charles W. Johnson, who brought his action against the casualty company to recover on an accident insurance policy for disability claimed to have been sustained as the result of an accident. Upon his death, the action was revived in the name of his administratrix.

The disability in question was due to dilation of the heart caused by taking a cold plunge bath.

The sole question submitted by the briefs for review here, though saved by motion for judgment on the pleadings, motion for a new trial, request to charge and exception to the charge given, is whether the injury complained of was effected solely and exclusively by accidental means.

The facts in the case are as follows:

On Sunday, June 9, 1909, Major Johnson was apparently in perfect health, being a man of military activities and accustomed to keep himself in good physical condition. He was wont to take horseback rides and upon his return therefrom to take cold plunge baths, from which, until the day in question, he had never experienced any bad effects.

This day in June was warm. The major started out about 9 A. M., returning about 1 P. M., heated and perspiring freely. He took his usual cold plunge, but this time it drove the blood back to his heart with force sufficient to cause the trouble which the doctors call acute dilation of the heart. Medical experts testified that such is not the usual result of taking a cold plunge bath, nor is such result reasonably to be anticipated therefrom.

There was evidence in the record, however, that there is danger in taking a cold plunge bath when one is heated, and that it is imprudent to take such bath when perspiring; also that the injury that occurred from taking this bath was a natural result from a natural cause.

The court charged the jury as follows:

"Now, the question will be this, gentlemen, what was Major Johnson to expect when he took this cold plunge? A man is supposed to expect that which would result from the natural consequence of his act, as that act appears to him at the time, not as it might appear to a physician, but as it would appear to him under all the circumstances surrounding that particular transaction. Reading from a reputable work:

"'The natural consequence of means used is the consequence which ordinarily follows from its use; the result which may reasonably be anticipated from its use and which ought to be expected. The probable consequence of the use of a given means is the consequence which is more likely to follow from its use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is produced by accidental means.'

"So, then, taking all the circumstances of this particular case in consideration, the situation of Major Johnson, his condition at that particular time, what had he a right to expect would be the result of a plunge into a tub of cold water? If the thing that he should naturally expect would be a dilation of the heart which would contract the muscles and cause the injury com-

plained of, if that was to be expected in the ordinary acceptation
of the term, by that kind of an act, then it would not be, acci-
dental, because he would be held responsible for the natural
consequences of his act, and consequently he would not be entitled
to recover in this case.    But if from a course of conduct hitherto
followed by him, he would have no reason or expectation to
believe that an injury, such as dilation of the heart, would be
occasioned by a plunge in cold water in that manner, then under
the rules that I have given you, the injury would be caused by
an accident and he would be entitled to recover in this case.

"Now, gentlemen, you can take into consideration your own
human experience with respect to these things.  Men can not
close their eyes to things which they know themselves.  Was the
result which happened to Major Johnson, a thing that could
reasonably be expected to follow from a cold bath?  If it was,
then he can not recover in this case nor can his executrix.  If it
was not, if the result was something he could not anticipate,
something that was not to be expected, then within the meaning
of the law, of the definitions I have given you, it would be ac-
cidental and it would be covered by the terms of this policy."

In criticism of this, counsel for plaintiff in error says:

"If this is the law, all injuries are accidental unless voluntarily
incurred.

"We maintain on the contrary, that the result of an act has
nothing to do with determining whether or not the act was an
accident.

"The fact that injury as the resuult of an act is certain, or
probable, or possible, makes it no less an accident, if the act was
accidental in its nature.  Nor does the fact that injury as the
result of an act is uncertain and the chance of injury remote and
not to be reasonably apprehended, make such injury, when it
does occur, one occasioned by accidental means.  The cause must
be accidental, the result does not determine the cause."

"The contention of plaintiff in error is that the event pre-
ceding the injury, and which was the proximate cause of the
injury, must be in the nature of an accident.  That an unex-
pected or unusual result of an act, not in the nature of an acci-
dent, does not render it an accident or the resulting injury one
occurring by accidental means.  In short, that the cause deter-
mines the result, while defendant in error claims that the result
determines the cause."

What has been quoted from the charge and from the brief of counsel for plaintiff in error sufficiently exhibits the two theories as to the law applicable in such cases as this. Both theories are sustained by the authority of adjudicated cases. The general rule contended for by plaintiff in error is thus stated by Joyce:

"A person may do certain acts, the results of which may produce unforeseen consequences, and may produce what is commonly called accidental death; but the *means* are exactly what the person intended to use and did use, and was prepared to use; the *means* were not accidental, but the *result* might be accidental." *3 Joyce on Insurance,* 3808.

This rule was applied in the case of *Carn* v. *Iowa Traveling Men's Association,* 106 Iowa, 281, where the death of the assured was caused by his taking morphine, knowing at the time how much he was taking, but not knowing that such amount would cause death.

In the case of *Schmidt* v. *Travelers Accident Association,* 42 Ind. App., 483, the assured died as a result of his exertions in climbing the steps of a hotel, carrying heavy satchels. The hotel was in a high altitude where the atmosphere was rarefied. The court applied the rule as given by Joyce and denied a recovery.

In the case of *Appel* v. *Aetna Life Insurance Co.,* 83 N. Y. Supp., 238, the assured suffered a rupture of the appendix from the ordinary jar incident to riding a bicycle, and was denied recovery.

The same was the result in the case of *Hastings* v. *Travelers Insurance Co.,* 190 Fed., 258, where the assured ruptured his heart in an effort to raise and lower himself by the use of his hands and arms when seated in a Morris chair. For other cases see briefs of counsel.

The contrary view, and the one followed by the trial judge, is formulated by Cooley in his Briefs on the Law of Insurance (p. 3156), as follows:

"Policies of accident insurance usually insure against 'bodily injuries caused by external, violent and accidental means.' The

important factor in this description of the risk assumed, is the word 'accidental.' In determining whether the cause of injury or death is one of the risks covered, it is therefore necessary to first determine what is meant by the term 'accidental,' and whether the particular cause was 'accidental,' within the definition. Strictly speaking a means is accidental perhaps only when disassociated from any human agency, but this narrow interpretation is not recognized in the law of accident insurance. Whether or not the means is accidental, is determined by the character of its effects. Accidental means are those which produce effects which are not their natural and proper consequences. The natural consequence of means used, is the consequence which ordinarily follows from its use, the result which may be reasonably anticipated from its use and which ought to be expected. The probable consequence of the use of a given means, is the consequence which is more likely to follow from its use, than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action, is not an accident, nor is it produced by accidental means. It is either the result of an actual design or it falls under the maxim that every man must be held to intend the natural and probable consequences of his deeds. On the other hand, an effect which is not the natural and probable consequences of the means which produced it, an effect which does not ordinarily follow and can not be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he can not be charged with the design of producing, is produced by accidental means. It is produced by means which was neither designed nor calculated to cause it. Such an effect is not the result of design, can not be reasonably anticipated, is unexpected and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

The leading case adopting this reasoning is *Horsfall* v. *Pacific Mutual Life Ins. Co.*, 32 Wash., 132, where the assured, a strong, healthy man, attempted to lift a bar of iron weighing 350 to 400 pounds, by taking hold of one end of it while another man lifted the other end. Nothing unusual happened while he was lifting the iron, but the exertion caused dilation of the heart. Commenting on the facts of the case the court says:

"The result certainly was unexpected. It did not take place according to the usual course of things. If instead of a sprain

of the muscles of the heart, the deceased had sprained the muscles of the back, or arm, or ankle, it certainly could not have been reasonably claimed that the result was not due to accident. The fact that the heart was dilated or ruptured, was none the less an accident according to the usual acceptation of the term and according to the definition above given. We think the evidence shows an accident within the meaning of the policy.''

In a case where three men jumped from a platform a few feet from the ground and one of them, the assured, in alighting, caused a stricture of the duodenum, from which he died in a few days, the Supreme Court of the United States held:

''The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.'' *U. S. Mut. Ac. Assn.* v. *Barry,* 131 U. S., 100.

*May on Insurance* (p. 515) speaks of the Barry case as one ''far more sensible'' than those holding the view urged by plaintiff in error.

In the case of *N. A. Life & Accident Ins. Co.* v. *Burrows,* 69 Pa. St., 43, it was held that a death resulting from abdominal strain occasioned while assisting to unload a load of hay, was caused by accidental means.

See also *Hay* v. *Liability Co.,* 181 Pa. St., 220.

On authority of the Barry case, it was held in the case of *West Com. Trav. Assn.* v. *Smith,* 85 Fed., 401, that death ensuing from blood poisoning which set in as a result of the assured

wearing a pair of new shoes which rubbed the skin off his toe, was caused by accidental means.

The same was held in the case of *Nax* v. *Travelers Ins. Co.*, 130 Fed., 985, where death resulted from a self-inflicted knife cut, made by the assured while trimming a corn, blood poisoning following.

Màny other cases might be cited to the same effect, and they seem to be the later cases.

Chancellor Kent said:

"The modern reports, and the latest of the modern, are the most useful, because they contain the last, and, it is to be presumed, the most correct exposition of the law."

In quoting this Lieber says:

"It might be added, because they relate to cases applying to the same circumstances and conditions with our own; they speak the same language with ourselves." *Lieber's Hermeneutics*, 226.

Accident insurance has now come to be a common thing; it is intended as a protection to those upon whom chance visits some injury while they are engaged in the daily and usual things of life. Every accident happens as the result of the working of fixed rules, but it is equally an accident if I voluntarily place myself under the operation of these rules without being able to foresee the consequences of so doing, as it is if I know the rules, but some power beyond my control puts me under their operation.

This thought is apparent in the case of *U. S. Mut. Accident Assn.* v. *Hubbell*, 56 O. S., 516, though the case turns on the application of another clause in the policy that the injury must not result from "voluntary exposure to unnecessary danger."

On page 525, Judge Spear says:

"It will not be doubted that the definition of 'death by accidental means,' given by the trial judge to the jury, viz, 'any event which takes place without the foresight or expectation of the person acted upon or affected by the event, was a proper definition."

Again, on page 526, he says:

"Accidents are the result very largely of the failure to observe due care, and yet the contract is intended as a remuneration in case of accident, and it is to procure the obligation of the company to pay this remuneration, that the assured pays the premium. As stated by Allen, J., in *Keene* v. *Association*, 161 Mass., 149: 'By taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents in whole or in part from his own inadvertence.'"

Having in mind this consideration of the nature of the accident insurance contract, a liberal and popular rather than a strict and philosophical meaning must be given to the word "means," qualified by the adjective "accidental," as used in the policy.

We know that if the means is accidental, the effect is accidental; that is conceded. But just as well we know that if the effect has the characteristics of an accident, we so characterize the means that produced it. In other words, it is common reasoning to say, as Cooley says: "Whether or not the means is accidental, is determined by the character of its effects."

Giving this rule to the jury to guide it in its deliberations upon the facts in this case, was instructing it to employ that method of reasoning which men ordinarily use, and was therefore proper.

There was no error in the charge, and this being so, because the whole case turns upon this one legal proposition, the judgment is affirmed.