**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3828
_____

PATRICIA THOMPSON,
                                              Appellant

v.

REAL ESTATE MORTGAGE NETWORK;
SECURITY ATLANTIC MORTGAGE COMPANY;
NOEL CHAPMAN, an individual; SAMUEL
LAMPARELLO, an individual
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2:11-cv-01494)
District Judge: Honorable Dennis M. Cavanaugh
_____

Argued November 6, 2013

Before: GREENAWAY, JR., VANASKIE, and ROTH,
*Circuit Judges*

(Filed: April 3, 2014)

Mitchell A. Schley, Esq. [ARGUED]
Two Tower Center Boulevard, 8th Floor
East Brunswick, NJ 08816
        *Counsel for Appellant*

Judith L. Spanier, Esq.
Abbey Spanier
212 East 39th Street
New York, NY 10016
        *Counsel for Appellant*

Ari Karen, Esq. [ARGUED]
Offit Kurman
8171 Maple Lawn Boulevard, Suite 200
Maple Lawn, MD 20759
        *Counsel for Appellees*

Douglas R. Kay, Esq.
Offit Kurman
8000 Towers Crescent Drive, Suite 1450
Tysons Corner, VA 22182
        *Counsel for Appellees*

Forrest G. Read, IV, Esq.
Offit Kurman
4800 Montgomery Lane, 9th Floor
Bethesda, MD 20814
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge*.

In this case we consider the efforts of plaintiff Patricia Thompson to hold her former employers responsible for alleged overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New Jersey Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-56a – 34:11–56a38. Thompson appeals from an order of the United States District Court for the District of New Jersey, which granted the motion of defendants to dismiss each of Thompson's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, we will vacate and remand.

I.

In June 2009, appellant Patricia Thompson, a New Jersey resident, was hired as a mortgage underwriter by defendant Security Atlantic Mortgage Company ("Security Atlantic"), a "nationwide direct mortgage lender."[1] App. 23. Shortly thereafter, however, she was assigned to a training class led by a representative for a different mortgage company, defendant Real Estate Mortgage Network ("REMN"). That employee "represented that REMN was a sister company of Security Atlantic." App. 93.

---

[1] Our recitation of the factual background of this appeal is derived from Thompson's Amended Complaint. For purposes of this appeal, we accept as true all facts set forth in the Amended Complaint, and draw all reasonable inferences from such allegations in favor of the complainant. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

In February 2010, allegedly in response to an investigation being conducted by the U.S. Department of Housing and Urban Development ("HUD") into Security Atlantic's mortgage practices, Thompson and many of her colleagues were asked by supervisors to fill out new job applications to work for REMN. Thompson completed the application as requested. From roughly that date forward, Thompson's paychecks were issued by REMN instead of Security Atlantic. Defendants characterize Security Atlantic, which is no longer in business, as "defunct."[2]

Despite Thompson's transfer to REMN, virtually no change occurred in on-site operations. Thompson and her colleagues continued to do the same work, at the same desks, at the same location. Thompson's pay rate, work email address, and direct supervisors remained the same. Thompson alleges that no employees were laid off during this transition, although some of her colleagues continued to receive paychecks from Security Atlantic.

The basis for this lawsuit against both Security Atlantic and REMN is Thompson's allegation that between June 2009 and the end of her employment with REMN on August 5, 2010:

> [D]efendants suffered and permitted plaintiff and other underwriters, closers and HUD reviewers to regularly work more

---

[2] Because that representation was made in defendants' motion papers before the District Court, App. 42, we treat it as a judicial admission. *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006).

than eight hours per day and more than forty hours per week without overtime compensation for all overtime hours worked. Employees [were] given turnaround times for assignments and employees routinely worked through lunch and at home to meet these requirements.

App. 99. Thompson also alleges that "[d]efendants uniformly misrepresented to plaintiff and other mortgage underwriters, closers and HUD reviewers that they were exempt, salaried employees and, therefore, ineligible to receive overtime pay." App. 101. The misconduct was allegedly "widespread, repeated and consistent." *Id.*

Aside from her claims against Security Atlantic and REMN, Thompson also seeks relief from defendants Samuel Lamparello (the co-owner and President of Security Atlantic) and Noel Chapman (the co-owner and Executive Vice President of Security Atlantic). The Amended Complaint alleges that throughout the time periods at issue, Chapman and Lamparello "made decisions concerning [Security Atlantic's] and REMN's day-to-day operations, hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation." App. 93. When a work or personnel issue arose at Security Atlantic or REMN that Thompson's immediate supervisor could not address alone, "the supervisor would consult with, among others, Chapman or Lamparello." *Id.*

In June 2010, Thompson directly asked Chapman about overtime compensation. He responded that he "did not

5

pay overtime to underwriters." App. 99. In July 2010, Chapman sent an email to "All Departments" stating, in part, "So many of you worked long hours, late nights and even weekends to make sure that all REMN customers are happy customers." App. 92. Thompson quit her job at REMN on August 5, 2010. In 2011, both Chapman and Lamparello became officers of REMN.

Thompson filed her "class and collective action" complaint on March 16, 2011.[3] On December 30, 2011, the District Court dismissed the complaint without prejudice for failure to state a claim.

Thompson filed her Amended Complaint on January 27, 2012. She asserts that all four defendants violated the FLSA by "failing to properly compensate plaintiff, failing to pay plaintiff overtime pay for time worked in excess of 40 hours in a workweek, and misclassifying plaintiff as exempt from the overtime wage requirements of the FLSA." App. 95. Thompson further seeks to hold REMN liable for SAMC's own statutory violations under theories of joint liability and successor liability. She also contends that Chapman and Lamparello were her "employer[s] and/or joint employer[s]" by virtue of their positions with the defendant companies, and therefore are "personally, jointly and severally liable for the violations of the FLSA and the [New Jersey Wage and Hour Law] by [Security Atlantic] and REMN." App. 92–93.

---

[3] Because the subject of this appeal is the District Court's dismissal of Thompson's personal claims for relief, we do not address Thompson's "class and collective action" claims in any way.

On August 31, 2012, the District Court dismissed without prejudice the entirety of Thompson's Amended Complaint. Thompson filed a timely notice of appeal and has not sought leave to file a second amended complaint.

## II.

We have jurisdiction under 28 U.S.C. § 1291 over a district court's dismissal without prejudice where, as here, the plaintiff elects to stand on the dismissed complaint without further amendment. *Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir. 2009).[4] Our review of a District Court's dismissal under Rule 12(b)(6) is *de novo*. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

III.

A.

The FLSA and its state-law counterpart, the New Jersey Wage and Hour Law, allow employees to sue their past or present employers for various employment-related causes of action. Like the District Court and parties, we will distinguish between Thompson's federal-law claims and state-law claims only as necessary.

Relevant here, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).[5] For employees who have been wrongly denied overtime pay, the FLSA offers a private cause of action to recover the corpus of the unpaid compensation along with equivalent liquidated damages, costs, and attorney's fees. *Id.* § 216(b).

Our first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* § 203(d). An "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). To "employ" means "to suffer or permit to work." *Id.* § 203(g). As we have recently recognized, the breadth of these definitions is both intentional and obvious:

> When determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." Under this theory, the FLSA defines employer "expansively," and with "striking breadth." The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the

---

[5] The language of New Jersey Wage and Hour Law § 34:11-56a4 is substantially similar to the FLSA, and provides: "Each employer shall pay to each of his employees . . . 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week[.]" § 34:11-56a4.

> broadest definition that has ever
> been included in any one act."

*In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467–68 (3d Cir. 2012) (citations omitted).

Thompson first challenges the District Court's dismissal of her most straightforward claims, *i.e.*, that (1) Security Atlantic committed statutory violations by failing to compensate Thompson appropriately between her date of hiring in June 2009 and her transfer to REMN in February 2010, and (2) REMN committed entirely separate statutory violations by failing to compensate Thompson appropriately between her date of hiring in February 2010 and the conclusion of her employment in July 2010. The District Court did not explain its reasoning for dismissal of these claims. Nor did defendants below mount a serious argument for such dismissal. Accordingly, we are left without the benefit of an articulated legal basis for the District Court's ruling. Defendants now attempt to justify the dismissal of these claims by arguing that Thompson's allegations improperly "group[] all defendants—individual and corporate—together and fail[] to differentiate between them as to alleged wrongful conduct." Appellees' Br. at 20.

The pleadings here put the corporate defendants on fair notice that the alleged violations began during Thompson's employment with Security Atlantic and persisted throughout her relatively brief tenure with the two companies. Accordingly, we will vacate the District Court's dismissal of Thompson's claims against Security Atlantic and REMN under a theory of primary liability.

B.

Thompson also appeals from the District Court's dismissal of her claims insofar as they depend on a theory of joint employment between Security Atlantic and REMN. Under the FLSA, multiple persons or entities can be responsible for a single employee's wages as "joint employers" in certain situations. 29 C.F.R. § 791.2. One such scenario occurs where both employers "exert significant control" over the employee, *N.L.R.B. v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982), "by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(3). Under these circumstances, each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations.

We have recently treated this topic in some depth, *see In re Enterprise*, 683 F.3d at 467–71, and in so doing announced a directive that we described as the "*Enterprise* test." [6] When assessing whether a "joint employer"

---

[6] Defendants suggest that Thompson's failure to cite *Enterprise* in the District Court, and the District Court's subsequent omission of that precedent from its opinion of August 31, 2012, precludes Thompson from benefitting from it now. The *Enterprise* decision, however, does not constitute a "claim" requiring presentation to the District Court. *See Yee v. City of Escondido,* 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). Thompson's "joint employer" claims were well established in the record.

11

relationship exists, a court should consider the following non-exhaustive list of relevant factors:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Id*. at 469. As with the existence of an employer-employee relationship in the first instance, however, the determination depends on "all the facts in the particular case." 29 C.F.R. § 791.2(a).

Here, the District Court emphasized that Thompson's employment by Security Atlantic was separate and distinct from her employment by REMN. This may be correct if one

---

We would be remiss if we failed to apply our own binding precedent simply because it was not cited before the District Court.

12

considers only the name of the payor appearing on Thompson's pay stubs. But Thompson alleges more. The Amended Complaint states that an employee of REMN conducted Thompson's training immediately after she was hired by Security Atlantic in June 2009, indicating that REMN had at least some authority to "promulgate work rules and assignments" even before REMN formally hired Thompson in February 2010. The employee responsible for Thompson's training allegedly described REMN as Security Atlantic's "sister company," a term which suggests some broader degree of corporate intermingling. And the scenario described by Thompson, in which she and virtually all other Security Atlantic employees were abruptly and seamlessly integrated into REMN's commercial mortgage business while some of those same employees continued to be paid by Security Atlantic, supports Thompson's claim that the two companies shared authority over hiring and firing practices.

We caution that our assessment rests heavily on the procedural posture of this litigation. Thompson, a low-level employee with each of the defendant companies, has had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures. It may well be that a fully developed factual record will preclude a finding that Security Atlantic and REMN were "joint employers" of Thompson for any of the pay periods at issue. But under these circumstances, we cannot say that Thompson's Amended Complaint fails to state a claim upon which relief can be granted. We will vacate the District Court's dismissal of Thompson's claims in this regard and remand for further proceedings.

C.

13

Thompson alternatively seeks to hold REMN liable for Security Atlantic's alleged violations not only on a joint employer theory, but also on the theory that REMN, as an alleged successor in interest to Security Atlantic, is obligated to assume that company's debts and liabilities. The parties dispute which law, state or federal, governs Thompson's FLSA successor liability claims.[7]

Defendants urge that we apply New Jersey law, which holds that successor corporations are legally distinct from their predecessors and do not assume any of the debts or liabilities of the prior entity, except where:

---

[7] Defendants argue that Thompson waived the opportunity to rely on federal common law by failing to raise the issue of its applicability before the District Court. The prudential rule that we not consider claims raised for the first time on appeal is at its strongest when a party presents an issue for the first time on appeal and thereby prevents the opposing party from introducing evidence relevant to that issue. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994). In this case, the proceedings remain at the pleadings stage. Neither party has introduced evidence of any kind. Nor is it a surprise to defendants on appeal that Thompson seeks relief on a theory of successor liability. Because we consider it extremely unlikely that our *de novo* analysis would be materially affected if that question had been presented squarely at an earlier juncture, and because the question of the law applicable to a claim predicated upon successor liability under the FLSA is an open and important question in this Circuit, we decline to hold that Thompson's failure to raise the issue effected a waiver in this instance.

(1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

*Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 815 (N.J. 1981). Here, Thompson claims that REMN is a "mere continuation" of Security Atlantic, and is therefore accountable for its legal liabilities. We have previously summarized New Jersey law pertaining to the "mere continuation" rule as follows:

Factors relevant to the "mere continuation" exception include continuity of ownership; continuity of management; continuity of personnel; continuity of physical location, assets and general business operations; and cessation of the prior business shortly after the new entity is formed. Also relevant is the extent to which the successor intended "to incorporate [the predecessor] into its system with as much the same structure

15

and operation as possible." Thus the court should determine whether "the purchaser holds itself out to the world as the effective continuation of the seller." However, the proponent of successor liability need not necessarily establish all of these factors.

*Marshak v. Treadwell*, 595 F.3d 478, 490 (3d Cir. 2009) (quoting *Bowen Engineering v. Estate of Reeve*, 799 F. Supp. 467, 487–88 (D.N.J. 1992)).

Thompson urges that, as to her FLSA claim, we apply a federal common law standard for successor liability that has slowly gained traction in the field of labor and employment disputes over the course of almost fifty years. That standard, which presents a lower bar to relief than most state jurisprudence, was designed to "impos[e] liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies[,]" *Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 94 (3d Cir. 2011), and dictates consideration of only the following factors: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly." *Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 178 (3d Cir. 2004) (quoting *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 402 (3d Cir. 1999)).

16

The Supreme Court crafted the federal common law standard in the context of a claim under the Labor Management Relations Act, *see John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548–51 (1964), and later applied the standard to claims under the National Labor Relations Act. *See Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 181–85 (1973). In the past decade we have further extended the federal standard to claims brought under Title VII, *see Brzozowski*, 360 F.3d at 177–79, and ERISA, *see Einhorn*, 632 F.3d at 93–99.

Two of our sister circuits have addressed the merits of this issue and concluded that application of the federal standard to claims under the FLSA is the logical extension of existing case law. *See*, *e.g.*, *Teed v. Thomas & Betts Power Solutions*, 711 F.3d 763, 765–77 (7th Cir. 2013); *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995). We agree. In *Teed*, Judge Posner, writing for the Court of Appeals for the Seventh Circuit, stated the following case for the ongoing vitality of the standard itself and for its applicability to claims under the FLSA:

> The idea behind having a distinct federal standard applicable to federal labor and employment statutes is that these statutes are intended either to foster labor peace, as in the National Labor Relations Act, or to protect workers' rights, as in Title VII, and that in either type of case the imposition of successor liability will often be necessary to achieve the statutory goals

17

because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them. This logic extends to suits to enforce the Fair Labor Standards Act. "The FLSA was passed to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA." *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995). In the absence of successor liability, a violator of the Act could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the buyer) and then dissolving. And although it can be argued that imposing successor liability in such a case impedes the operation of the market in companies by

18

increasing the cost to the buyer of a company that may have violated the FLSA, it's not a strong argument. The successor will have been compensated for bearing the liabilities by paying less for the assets it's buying; it will have paid less because the net value of the assets will have been diminished by the associated liabilities.

. . .

Thomas & Betts argues that the Act imposes liability only on "employers," 29 U.S.C. §§ 203(d), 216(b), and Thomas & Betts was not the employer of the suing workers when the Act was violated. But that is equally true when successor liability is imposed in a Title VII case, as the case law requires. It argues that Wisconsin has an interest in this case because it too has minimum wage and overtime laws. But states also have their own laws, paralleling Title VII, forbidding employment discrimination. It points out that most FLSA suits are brought by individuals for the recovery of individual damages rather than by the government

(though in fact the Department of Labor brings many), but likewise most Title VII suits are private rather than public. It argues that violations of the FLSA are "victimless," because no one is compelled to work for a company that violates that Act. Neither is anyone forced to work for a company that discriminates on grounds forbidden by Title VII, such as race and sex. Yet there are victims of the violations in both FLSA and Title VII cases— workers who would be paid higher wages if their employer complied with the FLSA and workers who would have better jobs and working conditions if their employer complied with Title VII. Moreover, there is an interest in legal predictability that is served by applying the same standard of successor liability . . . to all federal statutes that protect employees . . . .

Id. at 766-67.

We find that pronouncement well reasoned, directly applicable, and in accord with our own jurisprudence. [8]

---

[8] Indeed, this case mirrors *Einhorn*, in which we declared that "[i]n light of the Seventh Circuit's

20

Moreover, defendants provide no compelling reason why the federal common law standard should not be applied, as in *Brzozowski* and *Einhorn*, to this employment-related claim arising under a broad and worker-friendly federal statute. *See* 29 U.S.C. § 202.

The issue remains as to whether Thompson's allegations satisfy the federal common law standard in the case at hand. Here, the District Court concluded that the Amended Complaint, with respect to successor liability, alleges only "retention of employees and office space." App. 10. That assessment of the facts alleged in the Complaint is unduly narrow. The Amended Complaint in fact alleges that essentially all facets of the business at issue, including operations, staffing, office space, email addresses, employment conditions, and work in progress, remained the same after the February 2010 intercession of REMN. App. 94–95. We presently need not speculate as to the technical nature of the relationship between the two companies, although such evidence may be of great importance upon a motion for summary judgment. *See, e.g.*, *Steinbach*, 51 F.3d at 846 (finding no successor liability where the purported successor had only leased the predecessor's equipment and used employees "on a temporary basis"). For purposes of the instant motion we find Thompson's allegations sufficient to demonstrate a plausible "continuity in operations and work force." *Brzozowski*, 360 F.3d at 178.

With respect to the second factor, pre-transfer notice of the obligation's existence to REMN, Thompson alleges that

comprehensive analysis [applying the federal common law standard to ERISA claims], we need not reinvent the wheel." 632 F.3d at 96.

21

Security Atlantic was essentially controlled by a small supervisory and managerial group, including Lamparello and Chapman, who dictated payroll and scheduling and had ongoing knowledge of systematic FLSA violations. Thompson contends that when she and her colleagues were hired by REMN, the same practices continued under the same management, who were eventually integrated into corporate leadership roles with REMN. On these allegations it is unclear whether REMN had knowledge of Security Atlantic's allegedly improper overtime practices prior to the transfer. And we have no desire to undermine the importance of this factor with respect to REMN's ultimate liability. As we stated in *Einhorn*, "[t]he requirement of notice and the ability of the successor to shield itself during negotiations temper concerns that imposing successor liability might discourage corporate transactions." 632 F.3d at 96. But this factor, like others in this case, is not one as to which Thompson should be expected to come forward with detailed proof at this stage.

As to the third factor, the predecessor's "ability . . . to provide adequate relief directly," defendants have represented that Security Atlantic is now "defunct," which we take to mean that it is likely incapable of satisfying any award of damages to Thompson. In total, then, these allegations are enough to surmount a motion to dismiss under the federal standard.

We must give separate consideration to Thompson's claims under the New Jersey Wage and Hour Law. Because these claims were cognizable in the District Court only by virtue of supplemental jurisdiction, they are governed by the New Jersey standard for successor liability. Even so, however, we conclude for the same reasons described above that dismissal is not appropriate at this time. The Amended

Complaint describes continuity of operations, management, physical location, assets, and general operations. The predecessor corporation, Security Atlantic, went out of business shortly after the transfer. In light of these claims, we will not fault Thompson for her inability to make specific allegations as to continuity of ownership at this stage, particularly given her reasonable assertion that the inner workings of the privately held corporations at issue remain hidden to her. She has adequately raised a plausible claim for relief on a successor liability theory under the New Jersey Wage and Hour Law. Accordingly, we will vacate the District Court's order with respect to Thompson's claims under the FLSA and New Jersey Wage and Hour Law against REMN on a theory of successor liability and remand for further proceedings.

D.

The FLSA imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute "joint employers" for purposes of liability under the FLSA. We have addressed that specific topic in the analogous context of the Family and Medical Leave Act:

> [A]n individual is subject to FMLA liability when he or she exercises "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation" while acting in the employer's

23

interest. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (discussing individual liability under the FLSA's analogous definition of an "employer"). As the Fifth Circuit explained in interpreting the FLSA's analogous employer provision, an individual supervisor has adequate authority over the complaining employee when the supervisor "independently exercise[s] control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 195 (5th Cir. 1983)); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (holding that a company exercising "substantial control of the terms and conditions of the work" of the employees is an employer under the FLSA).

*Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012). The focus is on "the totality of the circumstances rather than on technical concepts of the employment relationship." *Id.* at 418 (quotation marks omitted).

Here, the Amended Complaint alleges that Lamparello and Chapman "made decisions concerning Security Atlantic's and REMN's day-to-day operations, hiring, firing,

24

promotions, personnel matters, work schedules, pay policies, and compensation." App. 93. When a work or personnel issue arose at Security Atlantic that Thompson's immediate supervisor could not address alone, "the supervisor would consult with, among others, Chapman or Lamparello." *Id.* And in June 2010, when Thompson asked Chapman about overtime compensation, he responded that he "did not pay overtime to underwriters." App. 99.

Defendants argue that Thompson's allegations as to the workplace roles and responsibilities of Chapman and Lamparello are limited and conclusory. Thompson responds that, as a former low-level employee in a privately held corporation, she will not have access to the specific facts regarding Chapman and Lamparello's involvement in Security Atlantic and REMN until after discovery, and that her limited allegations regarding their substantial workplace decision-making authority and involvement in day-to-day operations are sufficient for purposes of the pleadings.

We conclude that Thompson provides enough information in the Amended Complaint, including allegations of the scope of the individual defendants' workplace authority and of specific statements by Chapman as to overtime pay, to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. We will therefore vacate the District Court's order with respect to its dismissal of Thompson's claims against Chapman and Lamparello in their individual capacities and remand for further proceedings.

IV.

25

For the foregoing reasons, we will vacate the District Court's order of August 31, 2012, and remand for further proceedings consistent with this Opinion.